[ECF Nos. 111, 121, 122]

THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| **GERALDINE CAPOBIANCO JONES,** et al., <br><br> Plaintiffs, <br><br> v. <br><br> **AMANDA RYAN,** et al., <br><br> Defendants. | Civil No. 23-4557 (KMW/EAP) |

**OPINION**

This matter has been brought before the Court on numerous motions relating to a land survey provided by engineer surveyor Guy DeFabrites to resolve a boundary dispute between Plaintiffs—Geraldine Capobianco Jones, Rhys E. Jones, Sr., Rhys E. Jones, Jr., and Liam Jones—(collectively, "Plaintiffs") and Defendants Daniel and Elizabeth Thompson (collectively, the "Thompson Defendants"). The Thompson Defendants have moved to quash a Rule 45 subpoena issued by Plaintiff Geraldine Capobianco Jones to Mr. DeFabrites. ECF No. 111 (Thompson Defs.' Mot. to Quash). Plaintiffs have opposed the Motion and filed a Cross-Motion to Compel Compliance with the subpoena. ECF No. 122 (Pls.' Opp. & Cross-Motion). The Thompson Defendants have not opposed Plaintiffs Cross-Motion. *See generally* Dkt. Separately, the Thompson Defendants have filed a Motion for Limitation on and Sealing of Discovery. ECF No. 121 (Thompson Defs.' Mot. to Seal). Plaintiffs have opposed this Motion as well. ECF No. 127 (Pls.' Opp. to Sealing Motion). The Court considers these Motions jointly and decides the matters without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1. For the following reasons, and for good cause shown, the Thompson Defendants' Motion to Quash

is **DENIED**, Plaintiffs' Motion to Compel is **GRANTED**, and the Thompson Defendants' Motion for Limitation on and Sealing of Discovery is **DENIED**.

## FACTUAL BACKGROUND

I. **Facts in the Complaint**

The following facts are taken from Plaintiffs' Complaint. On December 20, 2020, Plaintiffs Rhys Jones, Sr. ("Rhys Sr.") and Geraldine Jones ("Geraldine"), husband and wife, purchased a property at 187 High Street, Maurice River, New Jersey at a special auction held by Maurice River Township. ECF No. 1-5 (Compl.) ¶¶ 1, 12. In April 2021, Plaintiffs began repairing and restoring the property and invested substantial time and money in making improvements. *Id.* ¶¶ 13-14.

Defendants Daniel and Elizabeth Thompson (the "Thompson Defendants"), who resided at the adjacent property of 189 High Street, approached Plaintiffs and said that they had wanted to purchase the property at 187 High Street but had not been aware of the Township's latest auction. *Id.* ¶ 13. Thereafter, according to Plaintiffs, the Thompsons began a campaign of harassment against Plaintiffs regarding the boundary between the two properties "with the objectives of obtaining ownership and the use of such [d]isputed [p]roperty and depriv[ing] Plaintiffs of the use and enjoyment of such [d]isputed [p]roperty." *Id.* ¶ 18. This campaign included the repeated filing of false complaints with the municipal court and repeated complaints to the New Jersey State Police; conducting surveillance of Plaintiffs' actions at the property; putting fences, an automobile, and other objects on the disputed property; moving the boundary stakes that showed the property survey points; and using a fraudulent land survey in court in support of their claim of the property boundaries. *Id.* ¶ 19.

As the dispute persisted, the relationship between Plaintiffs and the Thompson Defendants deteriorated. *Id.* ¶ 20. Plaintiffs allege that between May 1, 2021, and June 22, 2021, the

Thompson Defendants called the New Jersey State Police, Port Norris Barracks at least ten times to complain about the property line dispute and Plaintiffs' alleged trespassing. *Id.* ¶ 21. Plaintiffs further allege that the Thompson Defendants enlisted the assistance of their son, Officer Daniel Thompson, Jr., in their efforts by requesting that State Police Lieutenant Baugh become involved in the dispute by supporting the Thompson Defendants.[1]  *Id.* ¶¶ 22-23.

On June 22, 2021, Plaintiffs assert that the Thompson Defendants again falsely notified the State Police and Lieutenant Baugh that Plaintiffs were trespassing on their property. *Id.* ¶ 25. Defendant Trooper Amanda Ryan approached Geraldine and her son, Plaintiff Rhys Jones, Jr. ("Rhys, Jr."), in the middle back of their yard, stating that she was there to investigate a trespassing complaint. *Id.* ¶¶ 27-29. Trooper Ryan allegedly removed Geraldine's cell phone from her hand and handcuffed her but did not specify the reason. *Id.* ¶ 30. Defendant Troopers Ryan and Daryl Hill then tossed Geraldine to the ground, causing her to dislocate and fracture her right shoulder. *Id.* ¶ 34. Officers allegedly surrounded her and kicked her repeatedly all over her body, face, and head. *Id.* ¶ 35. Defendant Lieutenant Jamie Anne Champ then lifted Geraldine by her handcuffed, dislocated arm and dropped her twice on her left side. *Id.*

According to the Complaint, at one point, there were a total of twenty-one State Police Officers on Plaintiffs' property to "join in the attack." *Id.* ¶ 36. When Geraldine's son, Plaintiff Liam Jones ("Liam"), sought to shield his mother from further injury, Troopers Ryan and Hill grabbed his arm and bent it across a door frame, severely bruising it. *Id.* ¶ 40. Rhys, Jr. was also attacked and forced to the ground, where he was put in a chokehold and punched in the back of his

---

[1] In response to the Complaint, Daniel Thompson, Jr. filed a motion to dismiss, which the Court granted. *See* ECF Nos. 5 (Mot.), 29-30 (Order & Op.). The Court found that the Complaint failed to "present even a 'sheer possibility' that Defendant Daniel Thompson, Jr. engaged in any acts whereby the Court could reasonably draw an inference of liability for the conduct alleged." Order & Op. at 14.

head on his brain stem. *Id.* ¶ 42. Rhys Sr., a medical doctor working from home doing telemedicine, was also tackled to the ground, restrained, and arrested. *Id.* ¶ 43. Following their arrests, Plaintiffs were held overnight in the Cumberland County jail before being released the following day. *Id.* ¶ 46.

Thereafter, on September 2, 2021, the Thompsons filed an action in the New Jersey Superior Court, Chancery Division ("Chancery Division"), to determine the boundary between the properties. *Id.* ¶ 48. Plaintiffs allege that the Thompsons offered into evidence a survey done by Guy DeFabrites, a surveyor for Fralinger Engineering, which showed that the boundary line of the Thompson property extended to about three feet from the Jones's house. *Id.* According to the Complaint, however, prior to the Thompsons offering the survey, Mr. DeFabrites "had specifically informed and advised the Thompsons that the survey had been withdrawn and could not be relied upon as it was erroneous and inaccurate and that he agreed with the Feldman Survey [the survey obtained by Plaintiffs] as the proper boundaries established by the existing deeds." *Id.* ¶ 49. Despite receiving this information, the Thompsons allegedly submitted the original survey as an accurate and proper depiction of the boundary line, and the Chancery Division erroneously relied upon it to improperly define the boundaries. *Id.* ¶ 50. Plaintiffs requested a new trial from the Chancery Division but were denied, resulting in their appeal, which remains pending. *Id.* ¶ 51.

## II.     Relevant Procedural History

On June 20, 2023, Plaintiffs filed a Complaint in the Superior Court of New Jersey, Cumberland County, alleging claims against the Thompson Defendants, as well as Defendants New Jersey State Police Trooper A. Ryan, Trooper D. Hill, Daniel Thompson, Jr., Lieutenant J. Champ, Sergeant First Class (now Lieutenant) Baugh, and the State of New Jersey. *See* ECF No. 1-5 (Compl.). The Complaint alleges various violations of Article I, §§ 1 & 7 of the New Jersey Constitution and Plaintiffs' civil rights (Counts I-III), *id.* ¶¶ 60-79; intentional and negligent

4

infliction of emotional distress (Counts IV-V), *id.* ¶¶ 80-89; violation of Plaintiffs' Fourth Amendment rights pursuant to 42 U.S.C. § 1983 (Count VI), *id.* ¶¶ 90-92; violation of the Due Process Clause pursuant to 42 U.S.C. § 1983 (Count VII), *id.* ¶¶ 93-95; and fraud against the Thompson Defendants (Count VIII), *id.* ¶¶ 96-98.  Of particular relevance here, Count VIII of the Complaint alleges that the Thompson Defendants fraudulently submitted into evidence the DeFabrites survey, "knowing that it had been withdrawn as inaccurate and erroneous, with the intent to mislead the [Chancery Division] and Plaintiffs and which the Chancery Division relied upon[.]" *Id.* ¶ 97.

On August 15, 2023, Defendants removed this case to federal court.  ECF No. 1 (Notice of Removal).

On November 6, 2025, in the course of discovery, Plaintiff Geraldine served a deposition subpoena on Guy DeFabrites, the surveyor who provided the original May 20, 2021 survey of the Thompsons' property, and who allegedly withdrew his original survey in August 2021.  Pls.' Opp. & Cross-Motion, Exs. A & B.

On November 18, 2025, the Thompson Defendants filed a Motion to Quash the subpoena commanding DeFabrites's deposition.  *See* Thompson Defs.' Mot. to Quash.  The Thompson Defendants contend that: (1) they have standing to bring this motion because they will be unduly burdened by having to attend DeFabrites's deposition; (2) Plaintiffs' return of service does not indicate that the deponent was properly served; (3) Federal Rule of Civil Procedure 45(d)(3)(B)(ii) offers relief from a subpoena to an unretained expert, like DeFabrites; and (4) Mr. DeFabrites's opinion is of no probative value in the face of the Thompson Defendants' pending Motion to have Count VIII of the Complaint dismissed, and would work an undue burden on the witness.  *Id.* at 8-9.

5

On November 29, 2025, Plaintiffs filed opposition to the Motion to Quash and cross moved to compel compliance with the subpoena. Pls.' Opp. & Cross-Motion.

Thereafter, on December 1, 2025, the Thompson Defendants filed a separate Motion for Limitation on and Sealing of Discovery. Thompson Defs.' Mot. to Seal. They contend that Plaintiffs' use of this litigation to demand discovery pertinent to the property line claim already litigated in the Chancery Division and currently on appeal is improper, particularly in light of their pending motion to dismiss Count VIII of the Complaint. *Id.* at 9-12.

The Court now addresses each of these interrelated motions.

## THOMPSON DEFENDANTS' MOTION TO QUASH THE SUBPOENA TO GUY DEFABRITES

The Thompson Defendants first move to quash Plaintiffs' subpoena directed to non-party surveyor Guy DeFabrites. For the reasons set forth below, the Court finds that they lack standing to do so.

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery and provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." "Courts have construed Rule 26(b)(1) liberally, creating a broad vista for discovery which would encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J. 1990) (citations omitted). Moreover, relevance is "more loosely construed at the discovery stage than at the trial." *Id*. Nonetheless, "this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999). In particular, "the standards for nonparty discovery require a stronger showing of relevance than for simple party discovery." *Stamy v.*

6

*Packer*, 138 F.R.D. 412, 419 (D.N.J. 1990) (citing cases); *see also Hall v. Johnson & Johnson*, No. 18-1833, 2023 WL 8830784, at *4 (D.N.J. Dec. 20, 2023) (citing cases holding that non-party discovery requires a stronger showing of relevance than routine party discovery).

Federal Rule of Civil Procedure 45 governs the issuance, service, and enforcement of subpoenas.[2] If the information sought falls within the scope of permissible discovery, then a party may serve a subpoena on a third party to obtain documents, testimony, and/or other information. *See* Fed. R. Civ. P. 45(c). Rule 45, however, is not without limits, and provides, in relevant part, that "[o]n timely motion," a court must quash or modify a subpoena that "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A).

As a threshold matter, however, a party moving to quash a subpoena must have standing to bring such a challenge. *See Ramos v. Walmart, Inc.*, No. 21-13827, 2023 WL 2327208, at *3 (D.N.J. Mar. 2, 2023). "Generally, a motion to quash or modify a subpoena must be brought by the individual to whom it was directed." *Aetrex Worldwide, Inc. v. Burten Distrib., Inc.*, No. 13-1140, 2014 WL 7073466, at *4 (D.N.J. Dec. 15, 2014) (citing *Thomas v. Marina Assocs.*, 202 F.R.D. 433, 434-35 (E.D. Pa. 2001)). "Ordinarily, 'a party does not have standing to quash a subpoena served on a third party.'" *Rudelli v. Eli Lilly & Co.*, No. 19-7464, 2020 WL 13694732, at *1 (D.N.J. Nov. 13, 2020) (quoting *Thomas*, 202 F.R.D. at 434). An exception to that rule exists where the moving party claims a privilege or privacy interest in the subpoenaed information, but

---

[2] The scope of discovery under Rule 45 and Rule 26(b) is the same. *Chazanow v. Sussex Bank*, No. 11-1094, 2014 WL 2965697, at *2 (D.N.J. July 1, 2014) (citing *OMS Invs., Inc. v. Lebanon Seaboard Corp.*, No. 08-2681, 2008 WL 4952445, at *2 (D.N.J. Nov. 18, 2008)).

7

the moving party "does not have standing to assert a claim of privilege where the serving party is seeking information about persons other than the objecting party itself." *Id.* (citations omitted). Moreover, a party does not have standing to challenge a non-party subpoena on grounds of relevancy or undue burden. *See Buckhead Meat Co. v. AEBB of Greenwich Corp.*, No. 19-16766, 2022 WL 16708988, at *2 (D.N.J. Feb. 10, 2022); *see also Gov't Emps. Ins. Co. v. Trnovski*, No. 16-4662, 2018 WL 5281424, at *2 (D.N.J. Oct. 23, 2018) ("In this regard, '[a] party lacks standing to challenge subpoenas issued to non-parties on the grounds of relevancy or undue burden.'" (quoting *Universitas Educ., LLC v. Nova Grp., Inc.*, No. 11-1590, 2013 WL 57892, at *5 (S.D.N.Y. Jan. 4, 2013)).

Here, the Thompson Defendants have brought this Motion to Quash without asserting any privilege over the information within the scope of Guy DeFabrites's potential testimony. *See generally* Thompson Defs.' Mot. to Quash. Instead, they raise several other, non-privilege-related arguments, none of which substantiate their requested relief. First, they contend that they "will b[e] unduly burdened by having to attend the . . . proposed deposition[.]" *Id.* at 8. As noted above, however, undue burden is insufficient to confer standing because "it is the third-party that faces the burden of production and not the defendant." *Green v. Cosby*, 314 F.R.D. 164, 173 (E.D. Pa. 2016). Even so, while attendance at any deposition is in some sense a burden, it is nonetheless a burden consequent to litigation and not so undue as to require a subpoena to be quashed.

Second, the Thompson Defendants contend that Plaintiffs failed to accomplish proper service on Mr. DeFabrites. Thompson Defs.' Mot. to Quash at 8. Putting aside the fact that the Thompson Defendants lack standing to challenge service on a non-party, they provide no evidentiary support for their assertion. By contrast, Plaintiffs have provided a sworn Affidavit of Service reflecting that Mr. DeFabrites was personally served with a copy of the subpoena on November 6, 2025. Pls.' Opp. & Cross-Motion, Ex. B.

Third, the Thompson Defendants argue that "Rule 45(d)(3)(B)(ii) offers relief from subpoena to an unretained expert." Thompson Defs.' Mot. to Quash at 8. They assert that Plaintiffs are attempting to "extract [DeFabrites's] stock in trade [as a surveyor] for free." *Id.* Rule 45(d)(3)(B)(ii), however, states that "[t]o protect a person subject to or affected by a subpoena," a court may quash a subpoena if it requires disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." Fed. R. Civ. P. 45(d)(3)(B)(ii). Because the Thompson Defendants are not the parties "affected by [the] subpoena," they do not have standing to raise this provision. Moreover, Plaintiffs' subpoena appears to seek only the facts regarding Mr. DeFabrites's May 2021 original survey and corrected August 2021 survey, as opposed to an unretained expert opinion.

Fourth, the Thompson Defendants contend that Mr. DeFabrites's opinion is "of no probative value to this Court, particularly in the face of the Thompsons' pending Motion to have the Plaintiffs' Count VIII dismissed." Thompson Defs.' Mot. to Quash at 9. As previously noted, however, the Thompson Defendants do not have standing to raise a relevance objection. Moreover, given that Count VIII (fraud) remains a viable cause of action in this case and that Mr. DeFabrites's testimony is pertinent to that cause of action, any relevancy objection stands on tenuous grounds and is an insufficient basis to quash the subpoena.

Finally, the Thompson Defendants' raise a hodgepodge of arguments, including Mr. DeFabrites's need to travel (although the Thompson Defendants admit that he is "probably" within the 100 miles allowed by Rule 45(c)(1)(A)), Mr. DeFabrites's prior invocation of the Fifth Amendment in the Chancery Division trial, and Plaintiffs' general conduct and lack of civility in conducting depositions. Thompson Defs.' Mot. to Quash at 9. Aside from the Thompson Defendants' lack of standing to raise these arguments, they provide no basis to quash an otherwise

9

valid third-party subpoena.

In light of the foregoing, the Thompson Defendants' Motion to Quash the Subpoena to Guy DeFabrites is denied.

## PLAINTIFFS' CROSS-MOTION TO COMPEL COMPLIANCE WITH THE SUBPOENA

Beyond opposing the Thompson Defendants' Motion to Quash, Plaintiffs also separately move to compel Guy DeFabrites's compliance with the Rule 45 subpoena. *See generally* Pls.' Opp. & Cross-Motion.

Pursuant to the Federal Rules of Civil Procedure, a court may compel a non-party to produce documents or permit an inspection of records. *Franchitti ex rel. United States v. Cognizant Tech. Sols. Corp.*, No. 17-6317, 2025 WL 1557034, at *4 (D.N.J. May 30, 2025) (citing Fed. R. Civ. P. 34(c), 45(d) and (e)). "The scope of discovery as defined by Rule 26 similarly applies to discovery sought via a Rule 45 subpoena on a non-party." *Id.* (citations omitted). "Rule 45 also confers broad enforcement powers upon the court to ensure compliance with subpoenas, while avoiding unfair prejudice to persons who are the subject of a subpoena's commands." *Harris v. McDonald*, No. 21-1851, 2022 WL 3599394, at *4 (M.D. Pa. Aug. 23, 2022).

"The non-party receiving the subpoena may serve objections to the subpoena, provided such objections are served 'before the earlier of the time specified for compliance or 14 days after the subpoena is served[.]'" *Petroleum Mktg. Grp., Inc. v. Universal Prop. Servs., Inc.*, No. 22-2410, 2023 WL 5985300, at *2 (D.N.J. Mar. 30, 2023) (quoting Fed. R. Civ. P. 45(d)(2)(B)). "A court may deem the failure to timely serve objections to a subpoena as a waiver of any such objections." *Id.* (citations omitted).

"A party may move to compel discovery sought through a subpoena on a non-party." *Id.* (citing Fed. R. Civ. P. 37(a)(2)). The moving party bears the burden of showing that the sought-

10

after discovery from the non-party is relevant, after which the burden shifts to the resisting non-party to explain why the discovery should be precluded. *Id.* (citing *Biotechnology Value Fund, LP. v. Celera Corp.*, No. 14-4046, 2014 WL 4272732, at *1 (D.N.J. Aug. 28, 2014) (further citations and quotations omitted)). "Ultimately, a district court 'has broad discretion regarding the enforcement of subpoenas.'" *Id.* (quoting *Tattle Tale Portable Alarm Sys., Inc. v. Calfee, Halter & Griswold, LLP*, No. 11-7013, 2012 WL 1191214, at *3 (D.N.J. Apr. 10, 2012) (citation omitted)).

Here, as discussed above, Plaintiffs claim that Mr. DeFabrites had originally provided a survey of the disputed property between Plaintiffs and the Thompsons, but on August 27, 2021, he wrote to Elizabeth Thompson to inform her that he had uncovered an older deed which showed the disputed area belonged to Plaintiffs. Pls.' Opp. & Cross-Motion, Certif. of Geraldine Capobianco Jones ("Jones Certif.") ¶ 7. According to Geraldine, the Thompsons nonetheless filed an adverse possession claim in the Chancery Division on September 2, 2021, relying on the original survey. *Id.* Given this background, Plaintiffs now argue that, in order to establish that the Thompson Defendants made false trespassing claims against Plaintiffs, the current subpoena seeks to have DeFabrites testify about his advice to the Thompson Defendants about both the original and the corrected surveys. *Id.* ¶ 8. Plaintiffs assert that because the Thompson Defendants deny receiving any notice that the original survey was erroneous, Plaintiffs need to explore this subject with Mr. DeFabrites. *Id.* at ¶¶ 10, 12. Plaintiffs deny any intent to assert any civil or criminal claims against Mr. DeFabrites, and they have agreed to provide witness and travel fees to him. *Id.* ¶ 16.

Having sufficiently established relevance, the burden now shifts to Mr. DeFabrites to explain why discovery should not be permitted. The subpoena was served on Mr. DeFabrites on November 6, 2025. Pls.' Opp. & Cross-Motion, Ex. B. On November 17, 2025, Terance J.

11

Bennett, the Thompson Defendants' attorney, filed a letter with the Court indicating that, "[o]ver the years" he had "formed an attorney-client relationship and had privileged communications with surveyor [Mr.] DeFabrites as to various matters," and that he may represent Mr. DeFabrites at a deposition. ECF No. 108 (Nov. 17, 2025 Ltr.). Mr. Bennett then suggested that Mr. DeFabrites was not properly served, and that in any event, the deposition was improper given the Thompson Defendants' pending motion to dismiss. *Id.* The Court responded to that letter by informing Mr. Bennett that there was no pending motion to quash Mr. DeFabrites's deposition, and that absent such a motion, the deposition was to proceed as scheduled on November 20, 2025. ECF No. 109 (Order).

Subsequently, on November 18, 2025, Mr. Bennett filed the current Motion to Quash on behalf of only the Thompson Defendants. *See* Thompson Defs.' Mot. to Quash. At no point has Mr. DeFabrites—himself or through counsel—lodged objections to the subpoena, claimed that he was improperly served, identified any undue hardship, or identified relevance concerns. Having failed to do so, any such objections are waived. For these reasons, the Court grants Plaintiffs' Motion to Compel.

### THE THOMPSON DEFENDANTS' MOTION FOR LIMITATION ON AND SEALING OF DISCOVERY

In the final pending discovery motion, the Thompson Defendants seek to bar Plaintiff from demanding any discovery concerning Guy DeFabrites, including any email messages to or from Mr. DeFabrites, and to obtain an order restricting the use of all discovery obtained by Plaintiffs concerning the boundary line between the Thompson Defendants' property and Plaintiffs' property to only this case. *See generally* Thompson Defs.' Mot. to Seal. The Thompson Defendants assert that Plaintiffs continue to claim that Guy DeFabrites's land survey was fraudulent—an issue that

Plaintiffs had a full opportunity to raise in the Chancery Division. *Id.* at 4. And although Count VIII of the current Complaint relates directly to the Thompson Defendants' alleged fraudulent use of this survey, the Thompson Defendants argue that they have moved to dismiss this Count and that Plaintiffs have persisted in "using this forum to demand discovery only pertinent to the property line claim already litigated in the Chancery [Division] and currently under their appeal." *Id.* As such, they claim that the Court should (1) prevent Plaintiff from taking any discovery pertinent to the property line dispute; and (2) seal the discovery record to preclude Plaintiffs from using any such discovery in any other forum. ECF No. 121-2 (Proposed Order).

The Thompson Defendants' first request is akin to a motion to stay discovery pending resolution of the motion to dismiss. However, "the mere filing of a motion to dismiss does not stay discovery." *Udeen v. Subaru of Am., Inc.*, 378 F. Supp. 3d 330, 332 (D.N.J. 2019) (citing *Gerald Chamales Corp v. OKI Data Ams., Inc.*, 247 F.R.D. 453, 454 (D.N.J. 2007)). To determine whether a stay is appropriate, the Court should consider the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether denial of the stay would create a clear case of hardship or inequity for the moving party; (3) whether a stay would simplify the issues and the trial of the case; and (4) whether discovery is complete and/or a trial date has been set." *Id.* (citing *Jackson v. Trump Ent. Resorts, Inc.*, No. 13-1605, 2015 WL 13637411, at *4 (D.N.J. Feb. 11, 2015)).

The Thompson Defendants have not even mentioned these factors, let alone provided an analysis of them. Indeed, the Thompson Defendants identify no hardship or inequity that would result from producing the discovery requested by Plaintiffs, other than what they admit is minor inconvenience. By contrast, staying this portion of discovery pending a ruling on the motion to dismiss would unduly prejudice Plaintiffs and unnecessarily extend the discovery period of a case that has been pending for two and a half years. Indeed, with fact discovery coming to a close, any

13

further delay will again disrupt the Court's repeatedly-extended case management schedule. And if the Thompsons' Motion is denied, the Court would have to reopen discovery.

As to the second request for relief—that all discovery obtained by Plaintiffs concerning the boundary line dispute be sealed and precluded from use in any proceeding outside of the present case—the Thompson Defendants offer no legal authority for such a request. While it is within the Court's authority to restrict public access to information, it is well-settled that there is a "common law public right of access to judicial proceedings and records." *In re Cendant Corp.*, 260 F.3d 183, 192 (3d Cir. 2001). The moving party bears the burden to overcome the presumption of public access and must demonstrate that "good cause" exists for the protection of the material at issue. *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994). "Good cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking closure . . . . The injury must be shown with specificity." *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984) (internal citation omitted). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning," do not support a good cause showing. *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986).

Local Civil Rule 5.3 imposes additional requirements on motions to restrict public access to any materials filed with the Court or used in connection with judicial decision-making. The Local Rule dictates that a party seeking to redact or seal materials must attach an index to its motion papers that describes "with particularity" (a) the nature of the materials or proceedings at issue; (b) the legitimate private or public interest which warrants the relief sought; (c) the clearly defined and serious injury that would result if the relief sought is not granted; (d) why a less restrictive alternative to the relief sought is not available; (e) any prior order sealing the same materials in the pending action; and (f) the identity of any party or nonparty known to be objecting to the sealing request. L. Civ. R. 5.3(c)(3).

14

The Thompson Defendants have provided none of this particularized analysis, despite bearing the burden of doing so. Indeed, the Court can discern no possible injury that would result to the Thompsons from the Court's refusal to seal the documents. The only inference from their filing of the present Motion is that they bear some concern that the documents discovered may have an adverse impact on the currently pending appeal from the Chancery Division's decision. That concern does not carry their burden of showing good cause for the protection of the materials at issue. As such, the Court denies this Motion.

## CONCLUSION

For the foregoing reasons, the Court denies the Thompson Defendants' Motion to Quash the subpoena commanding the non-party deposition of Guy DeFabrites, ECF No. 111; grants Plaintiffs' Motion to Compel the DeFabrites deposition, ECF No. 122; and denies the Thompson Defendants' Motion for Limitation on and Sealing of Discovery, ECF No. 121. An appropriate Order follows.

                                                              s/Elizabeth A. Pascal
                                                              ELIZABETH A. PASCAL
                                                              United States Magistrate Judge

cc: Hon. Karen M. Williams, U.S.D.J.