[ECF No. 147]

### THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

|  |  |
|---|---|
| **GERALDINE CAPOBIANCO JONES, et al.,** | |
| **Plaintiffs,** | **Civil No. 23-4557 (KMW/EAP)** |
| **v.** | |
| **AMANDA RYAN, et al.,** | |
| **Defendants.** | |

### <u>OPINION</u>

Currently pending before the Court is the Motion by Plaintiffs Geraldine Capobianco Jones, Rhys E. Jones, Sr., Rhys E. Jones, Jr., and Liam Jones (collectively, "Plaintiffs") for Leave to File an Amended Complaint.  ECF No. 147 (Pls.' Mot.).  Defendants State of New Jersey, Amanda Ryan, Daryl Hill, Jamie Anne Champ, and Steven Baugh (collectively, the "State Defendants") have filed opposition, ECF No. 172 (State Defs.' Opp.), and Plaintiffs have filed a reply brief, ECF No. 174 (Pls.' Reply).[1]  The Court has reviewed the parties' submissions and decides this matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1.  For the following reasons, Plaintiffs' Motion is **GRANTED IN PART AND DENIED IN PART WITHOUT PREJUDICE**.

---

[1]  The State Defendants originally filed an opposition brief on January 20, 2026, but did not have the benefit of Plaintiffs' "form of the amended pleading that . . . indicate[s] in what respect(s) it differs from the pleading it amends," as required by Local Civil Rule 15.1(a)(2). Accordingly, the Court directed Plaintiffs to file that document, ECF No. 163, and then granted the State Defendants an extension until February 23, 2026, to file a more substantive response. ECF No. 168 ¶ 7.  The State Defendants filed that new opposition, ECF No. 172, and the Court considers it as their operative response.

**FACTUAL BACKGROUND[2]**

I.    **Plaintiffs' Purchase of the Property at Issue and the Ensuing Property Dispute**

This case has its origins in a property line dispute between neighbors, which devolved into years of arguments, police involvement, and lawsuits.  On December 20, 2020, Plaintiffs Rhys Jones, Sr. ("Rhys, Sr.") and Geraldine Jones ("Geraldine"), husband and wife, purchased a property at 187 High Street, Maurice River, New Jersey (the "Property") at a special auction held by Maurice River Township.  ECF No. 164, Ex. A (Proposed Am. Compl.), ¶ 12.  In connection with the purchase, the Township issued a quitclaim deed, describing the Property by the January 4, 2021 Township tax maps, and transferred the Property's title to Plaintiffs.  *Id*.

In April 2021, Geraldine and Rhys, Sr. took possession of the Property.  *Id.* ¶ 13.  Sometime thereafter, Defendants Daniel and Elizabeth Thompson (the "Thompson Defendants"), who resided at the adjacent property of 189 High Street, approached Plaintiffs and said that they had wanted to purchase the Property at 187 High Street but had not been aware of the Township's latest auction.  *Id.*  The Thompsons indicated that they had not purchased the Property at the previous auction because they did not want to pay the Township's asking price.  *Id.*

On May 1, 2021, Plaintiffs used several contractors to commence repair, remediation, restoration, and upgrading of the interior and exterior of the Property.  *Id.* ¶ 14.  On that same date, the Thompson Defendants objected to the presence of Plaintiffs' contractors in an area within a few feet of Plaintiffs' house, which the Thompson Defendants claimed was "too close" to the adjacent property line.  *Id.* ¶ 15.  The Thompson Defendants then asserted that the property line for the Thompsons' property extended to approximately three feet from the Joneses' house and

---

[2]   The following facts are taken from Plaintiffs' redline version of their proposed amended complaint, ECF No. 164.

that the boundary between the two adjacent properties was not that shown on the municipal tax maps or in the prior deeds for the two properties but rather was shown on a survey they had.  *Id.*

Plaintiffs and the Thompson Defendants initially pursued municipal neighbor and boundary dispute resolution avenues, with each party filing municipal complaints and individually procuring property surveys.  *Id.* ¶ 17.  The Thompson Defendants obtained a property survey from Fralinger Engineering by surveyor Guy DeFabrites, dated May 20, 2021 (the "DeFabrites Survey"), which showed the boundary inconsistent with the Township tax maps.  *Id.*  Plaintiffs obtained a property survey from Feldman and Associates (the "Feldman Survey"), which showed a boundary line consistent with the historic deeds for both properties.  *Id.*

Thereafter, according to Plaintiffs, the Thompson Defendants began a campaign of harassment against Plaintiffs regarding the boundary between the two properties "with the objectives of obtaining ownership and the use of such [d]isputed [p]roperty and depriv[ing] Plaintiffs of the use and enjoyment of such [d]isputed [p]roperty."  *Id.* ¶ 18.  This campaign allegedly included the repeated filing of false complaints with the municipal court and repeated complaints to the New Jersey State Police; conducting surveillance of Plaintiffs' actions at the property; putting fences, automobiles, and other objects on the disputed property; removing the original boundary set iron pin and cement block between the properties; and using a fraudulent land survey in court in support of their claim of the property boundaries while obstructing Mr. DeFabrites from testifying about his erroneous survey determinations.  *Id.* ¶ 19.

As the dispute persisted, the relationship between Plaintiffs and the Thompson Defendants deteriorated.  *Id.* ¶ 20.  Plaintiffs allege that between May 1, 2021, and June 22, 2021, the Thompson Defendants called the New Jersey State Police, Port Norris Barracks, at least ten times to complain about the property line dispute and Plaintiffs' alleged trespassing.  *Id.* ¶ 21.  Plaintiffs claim that Defendant State Police Officer Sergeant First Class Baugh (now Lieutenant) took it

upon himself to become involved in the Thompsons' claims over the Property and engaged in almost daily contact with the Thompson Defendants to cause other officers to act for the Thompsons' benefit. *Id.* ¶ 23.

## II.    The Events of June 22, 2021

On June 22, 2021, Plaintiffs allege that the Thompson Defendants again falsely notified the State Police and Lieutenant Baugh that Plaintiffs were trespassing on their property. *Id.* ¶ 25. Defendant Trooper Amanda Ryan, who was dispatched by proposed new defendant Sergeant MacNeir and overseen by Lieutenant Baugh, approached Geraldine and her son, Plaintiff Rhys Jones, Jr. ("Rhys, Jr."), in the middle of their backyard, stating that she was there to investigate a trespassing complaint. *Id.* ¶¶ 27-29. According to Plaintiffs, while Geraldine was lawfully on her property, Trooper Ryan allegedly removed Geraldine's cell phone from her hand and then handcuffed and arrested her without specifying a reason. *Id.* ¶¶ 30, 33. Defendant Troopers Ryan and Daryl Hill then tossed Geraldine to the ground, causing her to dislocate and fracture her right shoulder. *Id.* ¶ 34. Various other officers, including proposed new defendants Detective Dornewass, Trooper Varga, Trooper Wendell, and Trooper Homan-Kernan allegedly had their guns drawn and surrounded Geraldine and kicked her repeatedly all over her body, face, and head. *Id.* ¶ 35. According to Plaintiffs, Trooper Homan-Kernan then lifted Geraldine by her handcuffed, dislocated arm and dropped her twice on her left side while Detective Dornewass punched her in the face. *Id.* Plaintiffs further allege that later, at the Port Norris Police Station, Trooper Homan-Kernan further assaulted Geraldine by slamming her face and dislocated arm into the wall. *Id.*

According to the proposed amended complaint, at one point, there were a total of twenty-one State Police Officers on Plaintiffs' property to "join in the attack." *Id.* ¶ 36. In an effort to avoid further injury, Geraldine entered the back door of her home and pleaded with the police to leave. *Id.* ¶ 38. When Geraldine's son, Plaintiff Liam Jones ("Liam"), sought to shield his mother

from further injury, Troopers Ryan and Hill grabbed his arm and bent it across a door frame, severely bruising it, and then arrested him. *Id.* ¶ 40. Rhys, Jr. was also attacked and forced to the ground, where he was put in a chokehold and punched in the back of his head on his brain stem. *Id.* ¶ 42. Rhys, Sr., a medical doctor working from home doing telemedicine, was also tackled to the ground, restrained, and arrested. *Id.* ¶ 43. Following their arrests, Plaintiffs were held overnight in the Cumberland County Jail before being released the following day. *Id.* ¶ 46.

### III. The New Jersey Superior Court Action

In the aftermath, on September 2, 2021, the Thompson Defendants filed an action in the New Jersey Superior Court, Chancery Division ("Chancery Division"), to determine the boundary between the properties. *Id.* ¶ 48. Plaintiffs allege that the Thompson Defendants offered into evidence the DeFabrites Survey, which showed that the boundary line of the Thompson property extended to about three feet from the Joneses' house. *Id.* According to Plaintiffs, however, prior to the Thompson Defendants offering the survey, Mr. DeFabrites "had specifically informed and advised the Thompsons that the survey had been withdrawn and could not be relied upon as it was erroneous and inaccurate; that he agreed with the Feldman Survey [the survey obtained by Plaintiffs] as the proper boundaries established by the existing deeds; and that the boundary markers installed by Reale along High Street were misplaced and should be located closer to Olive Street." *Id.* ¶ 49. Despite receiving this information, the Thompson Defendants allegedly submitted the original survey as an accurate and proper depiction of the boundary line, and the New Jersey Superior Court, Chancery Division erroneously relied upon it to improperly define the boundaries. *Id.* ¶ 50. The Chancery Division agreed with the Thompsons and determined the boundary line in their favor. *See id.*

Plaintiffs requested a new trial from the Chancery Division but were denied, after which they appealed. *Id.* ¶ 51. The Appellate Division granted Plaintiffs a new trial. *Thompson v. Jones*,

No. A-3655-21, 2023 WL 7413694 (N.J. Super. Ct. App. Div. Nov. 9, 2023).  At the second trial, the Thompson Defendants again presented the DeFabrites Survey.  Proposed Am. Compl. ¶ 51. Plaintiffs claim that the Thompson Defendants' attorney intimidated and obstructed Mr. DeFabrites from testifying at the Chancery Court trial, which deprived them of evidence material to the trial.  *Id.*  Following the conclusion of the second trial on December 19, 2024, the Chancery Court again found in favor of the Thompson Defendants.  *See* Opinion, *Thompson v. Jones*, Dkt. No. C-21-21 (N.J. Super. Ct. Ch. Div. Mar. 7, 2025).[3]  Plaintiffs moved for reconsideration, which was denied on April 25, 2025.  *Thompson v. Jones*, Dkt. No. C-21-21 (N.J. Super. Ct. Ch. Div. Apr. 28, 2025).  Plaintiffs then filed a second appeal.  Proposed Am. Compl. ¶ 51.

## IV.    Relevant Procedural History

On June 20, 2023, Plaintiffs filed a Verified Complaint in the New Jersey Superior Court Law Division – Cumberland County, alleging claims against the Thompson Defendants, the State of New Jersey, and several New Jersey State Police Officers, including Trooper A. Ryan, Trooper D. Hill, Lieutenant J. Champ, Daniel Thompson, Jr., and Sergeant First Class (now Lieutenant) Baugh.  *See* ECF No. 1-5 (Compl.).  The Complaint alleges various violations of Article I, §§ 1 & 7 of the New Jersey Constitution and Plaintiffs' civil rights against all Defendants (Counts I-III), *id.* ¶¶ 60-79; intentional and negligent infliction of emotional distress against the Thompson Defendants and negligent infliction of emotional distress against the State Defendants (Counts IV-V), *id.* ¶¶ 80-89; violation of Plaintiffs' Fourth Amendment rights pursuant to 42 U.S.C. § 1983 against the Thompson Defendants and the Defendant Officers (Count VI), *id.* ¶¶ 90-92; violation of the Due Process Clause pursuant to 42 U.S.C. § 1983 against the Thompson Defendants and the

---

[3]  "[A] prior judicial opinion constitutes a public record of which a court may take judicial notice."  *M&M Stone Co. v. Pa.*, 388 F. App'x 156, 162 (3d Cir. 2010).

Defendant Officers (Count VII), *id.* ¶¶ 93-95; and fraud against the Thompson Defendants (Count VIII), *id.* ¶¶ 96-98.

On August 15, 2023, Defendants removed the case to this Court.  ECF No. 1 (Notice of Removal).  On October 17, 2023, the Court stayed this matter until the resolution of Plaintiffs' pending criminal matters.  ECF No. 16.  On May 21, 2025, following the conclusion of the criminal proceedings, the Court reopened this case.  ECF No. 56.  The case has proceeded, somewhat acrimoniously, through discovery.  *See generally* Dkt.

In accordance with the operative scheduling order, on December 22, 2025, Plaintiffs timely moved for leave to file an amended complaint.  ECF No. 147.  The proposed amended complaint names all of the original Defendants, with the exception of previously dismissed Defendant Daniel Thompson, Jr., and seeks to add as Defendants Detective McGinn, Trooper Angerman, Sergeant MacNeir, Trooper Wendell, Trooper Varga, Trooper Heim, Detective Dornewass, Trooper Harlinski, Trooper Homan-Kernan, and Trooper Favoretto (collectively, the "proposed new defendants").  *See generally* Proposed Am. Compl.  The proposed amended complaint also adds factual allegations related to the proposed new defendants and to Plaintiffs' original claims.

The State Defendants filed opposition, State Defs.' Opp., and the Thompson Defendants took no position on the Motion.  *See generally* Dkt.  On March 2, 2026, Plaintiffs filed a reply brief.  Pls.' Reply.  The Motion is now ripe for review.

## STANDARD OF REVIEW

Rule 15(a) governs amendments to pleadings before trial.  A party may amend its pleading once as a matter of course within either twenty-one days after serving it; or if the pleading is one to which a responsive pleading is required, the earlier of twenty-one days after service of a responsive pleading or twenty-one days after a motion under Rule 12(b), (e), or (f).  Fed. R. Civ. P. 15(a)(1).  If those deadlines have expired, a party may amend its pleading only with the opposing

party's written consent or the court's leave.  Fed. R. Civ. P. 15(a)(2).  "The court should freely give leave when justice so requires." *Id*.

The Third Circuit has adopted a liberal approach to the amendment of pleadings.  *Spartan Concrete Prods., LLC v. Argos USVI, Corp.*, 929 F.3d 107, 115 (3d Cir. 2019); *see also Donovan v. W. R. Berkley Corp.*, 566 F. Supp. 3d 224, 229 (D.N.J. 2021) ("Generally, there is a presumption in allowing the moving party to amend its pleadings.").  However, the Court may deny a motion for leave to amend in one of four instances: (1) the amendment would be futile; (2) the moving party has demonstrated undue delay, bad faith, or dilatory motives; (3) the amendment would prejudice the non-moving party; or (4) the moving party was put on notice of deficiencies in its pleading but chose not to resolve them.  *U.S. ex rel. Schumann v. AstraZeneca Pharms. L.P.,* 769 F.3d 837, 849 (3d Cir. 2014) (quotations omitted).  Ultimately, the decision of whether to grant leave to amend lies within the sound discretion of the court.  *Arab Afr. Int'l Bank v. Epstein*, 10 F.3d 168, 174 (3d Cir. 1993).

## **DISCUSSION**

As noted above, Plaintiffs seek to add ten additional New Jersey State Police Officer Defendants and to bolster the factual allegations throughout their Complaint.  The State Defendants now oppose this Motion on several grounds:  (1) futility, *see* State Defs.' Opp. at 4-6, 9-10; (2) undue delay, bad faith, and prejudice, *id.* at 7-10; and (3) gross inequity in permitting Plaintiffs to amend their Complaint when their supplied discovery remains deficient.[4]  *Id.* at 11-

---

[4] The State Defendants also reassert the argument presented in their original opposition brief, ECF No. 159, that Plaintiffs' Motion is out of time.  State Defs.' Opp. at 6-7.  The State Defendants cite the Court's September 16, 2025 Order, which sets November 21, 2025, as the date by which any motions for leave to amend the pleadings were due to be filed.  *Id.* at 7.  They then note that Plaintiffs' Motion was not filed until more than a month later, on December 22, 2025.  *Id.*  However, as the Court explained in detail at the February 9, 2026 in-court hearing, this argument is meritless and should not have been reasserted in the State Defendants' amended opposition.  Specifically, the Court pointed the State Defendants to the November 7, 2025 Order,

12. Plaintiffs have filed a reply brief responding to each of the State Defendants' arguments. *See* Pls.' Reply. The Court addresses each argument individually.

## I.   Futility

"Futility"—as applied to the amendment of a complaint under Federal Rule of Civil Procedure 15—"means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Accordingly, the futility of an amended complaint is governed by the same standards of legal sufficiency as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 243 (3d Cir. 2010). Under these standards, a court must accept all factual allegations in a proposed amended complaint as true and view them in the light most favorable to the plaintiff. *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022). Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). Moreover, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

Here, the State Defendants' futility argument is threefold. First, they contend that Plaintiffs have relied on only generalized allegations of misconduct against some of the proposed new defendants. Second, they assert that Plaintiffs fail to adequately plead a claim against Sergeant

---

ECF No. 104, in which the Court expressly extended the time for amendment/joinder of new parties to December 22, 2025. Because Plaintiffs filed their Motion within that time period, the Motion is timely.

MacNeir, who was only a supervisor and who was not present during the events of June 22, 2021. Finally, they claim that Trooper Heim was not involved in the events of June 22, 2021, and therefore, he should not be added as a defendant.

A.       Generalized Allegations

The State Defendants first argue that Plaintiffs' proposed amended complaint fails to provide sufficient context to support the addition of ten new individual defendants in this action. State Defs.' Opp. at 4.  They argue that originally on June 22, 2021, only Defendant Troopers Ryan and Hill were on the scene.  *Id.*  When Plaintiffs escalated events by physically resisting arrest and using power tools to barricade their home, Troopers Ryan and Hill called for backup officers to secure the scene and protect the officers already there.  *Id.* at 4-5.  The State Defendants now contend that "[n]either the Motion nor the proposed Amended Complaint set forth any reason why the number of Defendants before this Court should be near-tripled, which will essentially grind the litigation to a halt as it stands, and re-start the paper discovery process as to the Additional NJSP Persons."  *Id.* at 5.  Defendants further contend that Plaintiffs' amendments "seek to attribute certain acts of conduct to certain NJSP persons" in a highly subjective manner, and then they fail to offer any specific allegations of misconduct against proposed defendants McGinn, Angerman, Heim, Harlinski, and Favoretto.  *Id.* at 6.

"'Courts in this district routinely dismiss complaints when the complaints contain improper "group pleading."'"  *Kelly v. Ewing Twp.*, No. 24-10824, 2025 WL 1993631, at *3 (D.N.J. July 17, 2025) (quoting *JD Glob. Sales, Inc. v. Jem D Int'l Partners, LP*, No. 21-19943, 2023 WL 4558885, at *7 (D.N.J. July 17, 2023) (citing cases)).  Mere "conclusory allegations against [d]efendants as a group," which "fail[] to allege the personal involvement of any [d]efendant," are insufficient to survive a motion to dismiss.  *Galicki v. New Jersey*, No. 14-169, 2015 WL 3970297, at *2 (D.N.J. June 29, 2015).  A plaintiff must allege "meaningful facts" that "establish each

10

individual [d]efendant's liability for the misconduct alleged." *Id.* "Even under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants." *Shaw v. Hous. Auth. of Camden*, No. 11-4291, 2012 WL 3283402, at *2 (D.N.J. Aug. 10, 2012) (citation omitted). "Group pleading fails to satisfy Rule 8 'because it does not place Defendants on notice of the claims against each of them.'" *JD Glob. Sales*, 2023 WL 4558885, at *7 (quoting *Conserve v. Orange Twp.*, No. 21-872, 2022 WL 1617660, at *4 (D.N.J. May 23, 2022) (further quotation omitted)). In addition, "the lack of well-pleaded facts does not allow the Court 'to draw the reasonable inference that [each] defendant is liable for the misconduct alleged.'" *D'Addario v. Johnson & Johnson*, No. 19-15627, 2020 WL 3546750, at *6 (D.N.J. June 30, 2020) (quoting *Iqbal*, 556 U.S. at 678)). Group pleading thus "'for[ces] both the Defendants and the Court to guess who did what to whom when. Such speculation is anathema to contemporary pleading standards.'" *Baldeo v. City of Paterson*, No. 18-5359, 2019 WL 277600, at *4 (D.N.J. Jan. 18, 2019) (quoting *Japhet v. Francis E. Parker Mem'l Home, Inc.*, No. 14-1206, 2014 WL 3809173, at *2 (D.N.J. July 31, 2014)).

Here, the proposed amended complaint's sole allegations against Detective McGinn, Trooper Angerman, Trooper Harlinski, Trooper Heim, and Trooper Favoretto are as follows:

> 6.    Defendant A. Ryan was the Investigating State Trooper, D. Hill was an arresting State Trooper, and Troopers Homan-Kern[a]n, Wendell, Angerman, Varga, Harlinski, MacNei[r], Heim, Favoretto and Detectives McGinn and Dornewass were State Troopers and employees of the State Police of New Jersey who were present on Plaintiff[s'] property on June 22, 2021 and engaged in the unconstitutional, illegal, tortious, and other improper actions against Plaintiffs complained about.

Proposed Am. Compl. ¶ 6.

> 9.    Upon information and belief, Defendant Sergeant Baugh, is an officer of the New Jersey State Police and acted in concert with Daniel and Elizabeth Thompson to oversee the actions against the

11

Plaintiffs by the other Officer Defendants to deprive Plaintiffs of their rights.

10.    The following State Police Officers:

| | | |
|---|---|---|
| Trooper Homan-Kernan | Trooper Angerman | Sergeant Mac Nei[r] |
| Detective McGinn | Trooper Varga | Trooper Heim |
| Detective Dornewass | Trooper Harlinski | Trooper Wendell |
| Trooper Favoretto | | |

improperly participated in the misconduct.

Proposed Am. Compl. ¶¶ 9-10.

Such allegations do nothing more than allege that these Defendants, as a group, undertook certain illegal acts. While Plaintiffs' amended pleading attributes additional specific conduct to proposed additional Defendants Trooper Homan-Kernan, Sergeant MacNeir, Trooper Varga, Detective Dornewass, and Trooper Wendell, Plaintiffs provide no allegations to put McGinn, Angerman, Harlinski, Heim, or Favoretto on notice of what actions they took or how they violated any of Plaintiffs' rights, other than being present at the scene on June 22, 2021. Such group pleading fails to provide notice of what the claims against these proposed defendants are and the grounds upon which they rest, leaving to speculation as to "who did what to whom when." *Baldeo*, 2019 WL 277600, at *4; *see generally* Fed. R. Civ. P. 8. Because courts in this District have dismissed complaints under Federal Rule of Civil Procedure 12(b)(6) when they contain improper "group pleading," and because the Rule 12(b)(6) standard applies when considering motions for leave to amend, the Court finds that Plaintiffs' proposed amendment to add these five individuals is futile. Accordingly, the Court denies without prejudice Plaintiffs' request for leave to amend as to proposed new defendants McGinn, Angerman, Harlinski, Heim, and Favoretto.

12

B.      Sergeant MacNeir

Plaintiffs also seek to add as a defendant Sergeant MacNeir, who was not present at the scene on June 22, 2021, but who allegedly had supervisory responsibility over Defendant Trooper Ryan.

Generally, personal involvement by the defendant in the alleged constitutional violation is central to a § 1983 claim, and liability cannot rest on a theory of *respondeat superior. See Chavarriaga v. N.J. Dep't of Corrs.*, 806 F.3d 210, 222 (3d Cir. 2015).  Supervisory liability may be premised on one of two theories.  *See A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).  Under the first theory, defendants may be sued as policy makers "if it is shown that such defendants, 'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'" *Id.* (alteration in original) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)).  "The second theory of liability provides that a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *Id.* (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995)).  Knowledge in a "failure to supervise" claim must consist of either "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents."  *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000) (quoting *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 (3d Cir. 1997) (further quotation omitted)).

Here, the proposed amended complaint offers the following allegations against proposed defendant Sergeant MacNeir:

> 27.  In response to the Thompson Defendants' complaint [on June 22, 2021], Officer Ryan was dispatched by Sergeant MacNeir who was being overseen and supervised by S[e]rgeant Baugh and arrived

13

> at the Thompson Property at 189 High Street purportedly to investigate the alleged trespass by Plaintiffs and was then told by Elizabeth Thompson that Plaintiffs had trespassed in the rear of the Thompson Property, which was not in dispute.

Proposed Am. Compl. ¶ 27.

> 30.  After meeting with Geraldine on the Jones Property and based upon the Thompson Defendants' complaint that day and the instruction of her supervisor, believed to be Sergeant Baugh or MacNeir, Officer Ryan, acting under color and cover of New Jersey law and her claimed authority as a State police officer, after Trooper Hill had already grabbed Geraldine's arm and restrained her without stating she was under arrest, Ryan then removed Geraldine's cell phone from her hand, grabbed her other arm and then stated she was arresting Geraldine without notify[ing] Geraldine before arresting and restraining her of the reason.

*Id.* ¶ 30.

> 31.     Upon information and belief, the arrest by Officer Ryan of Geraldine was given for Geraldine's alleged trespassing that day on the Disputed Property and the instruction to arrest Geraldine [was] given to Ryan by S[e]rgeant Baugh or S[e]rgeant MacNeir under the supervision of S[e]rgeant Baugh.   Moreover, the property boundaries and the ownership of the Disputed Property, which was in the front of the Jones property, were still then in dispute and had not yet been determined by the Superior Court.

*Id.* ¶ 31.

Because these allegations set forth no policy, custom, or practice established and maintained by Sergeant MacNeir, Plaintiffs must rely on the second type of supervisory liability. To that end, the proposed amended complaint alleges—albeit in bare-bones fashion—that Sergeant MacNeir expressly dispatched Officer Ryan to the Thompson Property on June 22, 2021, and directed Officer Ryan to arrest Plaintiff Geraldine, which actions gave rise to the alleged constitutional violations.  Such allegations, read in the light most favorable to Plaintiffs, state a plausible claim against Sergeant MacNeir.  Accordingly, Plaintiffs' proposed addition of Sergeant

MacNeir as a defendant would not be futile, and thus, Plaintiffs' Motion to add Sergeant MacNeir as a defendant is granted.

        C.      <u>Trooper Heim</u>

Finally, the State Defendants contend that Plaintiffs' attempted inclusion of Trooper Heim as a defendant is futile because Trooper Heim was not involved in the events of June 22, 2021, and the proposed amended complaint contains no factual basis for his liability. As set forth above, however, the Court has already denied Plaintiffs leave to add Trooper Heim because the proposed amended complaint includes him only in group pleadings with no specific allegations regarding his actions. Accordingly, the Court need not address this argument.

**II.    <u>Whether the Proposed Amendment Should Be Denied on Grounds of Undue Delay, Bad Faith, and/or Prejudice</u>**

The State Defendants next oppose the filing of Plaintiffs' proposed amended complaint on grounds of undue delay, bad faith, and/or prejudice. The State Defendants posit that Plaintiffs have known of the identities of at least seven[5] of the ten additional defendants they seek to add as early as service of initial discovery. State Defs.' Opp. at 8. Specifically, the State Defendants note that Plaintiffs' initial discovery, served on July 31, 2025, included a document entitled "03. W173874 Jones Names of 21 Troopers," which is a September 30, 2021 receipt in response to Plaintiffs' OPRA request for information related to the June 22, 2021 incident. *Id.* According to the State Defendants, this receipt contained a list of "Responding Troopers," including seven of the ten proposed new defendants: Angerman, Varga, Dornewass, McGinn, Favoretto, Homan-

---

      [5]    The State Defendants confusingly state that eight of the ten proposed additional defendants were identified in their initial discovery, State Defs.' Opp. at 8, but the exhibits attached to attorney Nuo Jiang's Certification only show that seven of the ten proposed additional defendants were identified in the State Defendants' initial discovery. *See* ECF No. 172-1, Updated Certification of Nuo Jiang ("Jiang Certif."), Ex. B (Police Report). Moreover, the State Defendants later admit that three of the ten proposed additional defendants were not previously identified. Jiang Certif. ¶ 22.

Kernan, and Wendell.  Jiang Certif., Ex. A (OPRA Receipt).  In addition, the State Defendants also contend that their initial discovery responses and document production were served on the Plaintiffs on August 7, 2025, and included a copy of the June 22, 2021 police report, which also identified these seven proposed new defendants.  *Id.*, Ex. B.  The State Defendants thus argue that Plaintiffs had knowledge of these seven individuals' identities significantly earlier in the litigation yet failed to seek leave to add them as parties until December 2025.  State Defs.' Opp. at 8, 10-11.  In turn, they claim that leave to amend will cause undue delay that will substantially prejudice the existing State Defendants, the potential new defendants, and the Court.  *Id.* at 10-11.

Plaintiffs respond that the names added to the amended complaint simply replaced the "John Doe" Defendants in the original complaint.  Pls.' Reply at 5.  Plaintiffs note that these officers were first identified by the State Defendants on December 1, 2025, following Plaintiffs' request for identification of individuals in still photographs taken from Trooper Ryan and Trooper Hill's body camera videos.  *Id.*  They claim that "[a]ll officers who were at the Jones[es'] house on June 22, 2021, likely had notice of the claims and they and their fellow officers who engaged in the mob assault on the Plaintiffs were likely alerted by the notoriety of the June 22, 2021 police events and of the Plaintiffs' complaint, and by referring to the unnamed officers as 'John Doe' defendants."  *Id.* at 7.  Plaintiffs further assert that these new individuals "likely all prepared incident notes or reports and discussed the matter with each other and the State has long been aware of Plaintiffs' efforts to identify all perpetrators."  *Id.*  Finally, Plaintiffs argue that adding the newly named officers will not materially expand discovery because they intend to take only brief depositions of three of those officers and have already begun scheduling them.  *Id.* at 6.

Here, the Court declines to find undue delay resulting in unfair prejudice.  It is well established that "[t]he mere passage of time does not require that a motion to amend a complaint be denied on grounds of delay . . . .  In fact, delay alone is an insufficient ground to deny leave to

amend." *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001) (internal citations omitted). A delay becomes undue only when it places an "unwarranted burden on the court" or may be prejudicial to the opposing party. *Id*. (quotation omitted); *see also Mullin v. Balicki*, 875 F.3d 140, 151 (3d Cir. 2017) ("[D]elay that is 'undue'—a delay that is protracted and unjustified—can place a burden on the court or counterparty, or can indicate a lack of diligence sufficient to justify a discretionary denial of leave." (citations omitted)).

"Implicit in the concept of 'undue delay' is the premise that Plaintiffs, in the exercise of due diligence, could have sought relief from the court earlier." *In re Pressure Sensitive Labelstock Antitrust Litig.*, No. 03-1556, 2006 WL 433891, at *1 (M.D. Pa. Feb. 21, 2006); *see also Adams v. Gould Inc.*, 739 F.2d 858, 868 (3d Cir. 1984). Thus, the question of undue delay requires the court to focus on the movant's reason for not amending sooner, while "bearing in mind the liberal pleading philosophy of the federal rules." *Cureton*, 252 F.3d at 273; *see also Lindquist v. Buckingham Twp.*, 106 F. App'x 768, 775 (3d Cir. 2004) (noting that the question of undue delay, as well as the question of bad faith, requires the court to focus on the plaintiff's motives for not amending their complaint to assert this claim earlier); *Mullin*, 875 F.3d at 151 (holding that a motion for leave to amend may be denied if the moving party can offer "no cogent reason" for its delay in seeking the amendment (quoting *CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 629 (3d Cir. 2013)). Ultimately, "the obligation of the trial court in its disposition of the motion is to articulate the imposition or prejudice caused by the delay, and to balance those concerns against the movant's reason for delay." *Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 520 (3d Cir. 1988) (citing *Adams*, 739 F.2d at 868-69).

Here, the Plaintiffs have articulated sufficient reasons for not seeking leave to amend sooner. As noted above, on October 17, 2023, the Court stayed the matter until the resolution of Plaintiffs' pending criminal matters. ECF No. 16. The matter was not reopened until May 21,

17

2025, at which time Plaintiffs expressed their need to obtain body worn camera footage from the State Defendants. *See* ECF No. 56 ¶ 3. As early as May 30, 2025, Plaintiffs indicated that they knew the identities of the officers at the June 22, 2021 event but continued to seek the camera footage. *See* ECF No. 58 (Pls.' May 30, 2025 Ltr. identifying twenty-one officers at the scene). As of June 25, 2025, the State Defendants had not yet provided the body-worn camera footage to Plaintiffs. *See* ECF No. 60 (State Defs.' June 25, 2025 Ltr.). On September 29, 2025, following receipt of that body worn camera footage, Plaintiffs provided still photographs to the State Defendants for identification of the specific troopers in those photographs. *See* ECF No. 115 (Pls.' Nov. 23, 2025 Ltr.). As of November 23, 2025, Plaintiffs had yet to receive the requested identification. *Id.* Following a discovery conference, the Court ordered that the State Defendants provide the requested identifications no later than December 1, 2025. ECF No. 120 (Nov. 24, 2025 Order) ¶ 5.[6] On December 22, 2025, Plaintiffs filed the current Motion for Leave to Amend. *See* Pls.' Mot.

In light of this history, the Court does not find any undue delay. Although Plaintiffs knew of the identity of the officers on the scene, they did not have a sufficient factual basis to properly allege which, if not all of these officers, allegedly violated their rights. *See Sabatino v. Union Twp.*, No. 11-1656, 2013 WL 1622306, at *7 (D.N.J. Apr. 15, 2013) (noting that although defendants "technically provided the names of the parties that plaintiff now seeks to add to the proposed amended complaint in their Rule 26 initial disclosures[,]" it "did not become clear to plaintiff that they were the proper parties to add to the complaint until he received defendants'

---

[6] Notably, Plaintiffs continued to seek additional body camera footage as of December 18, 2025, ECF No. 136 (Pls.' Dec. 18, 2025 Ltr.), but the Court denied Plaintiffs' request based on the State Defendants' certified representation that they had produced all such footage and directed that, to the extent Plaintiffs sought leave to amend their Complaint, they would have to do so by their extended date of December 22, 2025, ECF No. 137 (Order).

August 13, 2012 letter."). Indeed, had Plaintiffs moved to amend prior to having the body worn camera footage and the still photography identifications, they would not have been able to articulate which officers participated in the alleged constitutional deprivations and which officers were merely present at the scene.

Moreover, the Court finds no clear undue prejudice. While the addition of these officers will perhaps delay the close of this already protracted fact discovery, the State Defendants do not dispute that the new proposed defendants were aware of the action and their potential to be named. *See generally Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2006) (noting that when an amended pleading seeks to add new parties, the court must consider whether the new parties knew or should have known that the action would have been brought). The State Defendants also have not articulated the extent of the prejudice the proposed new defendants would suffer, other than to contend that they will be "made to enter a litigation as new Defendants while other parties are in the final stages of discovery." State Defs.' Opp. at 10. While the State Defendants argue that they will need to "restart the entire discovery process," *id.*, the Court finds that the majority of discovery has been completed and that Plaintiffs' amendments will warrant only a few additional depositions.[7] Absent any undue delay and accompanying unfair prejudice, the Court will not deny leave to amend on this ground.

### III. Whether Plaintiffs' Alleged Discovery Deficiencies Warrant Denial of the Motion for Leave to Amend

In their last argument, the State Defendants contend that the Court should deny leave to amend because Plaintiffs "have not fulfilled the full weight of their discovery obligations." State Defs.' Opp. at 12. Specifically, they argue that, as of the date of their brief—February 23, 2026—

---

[7] According to the State Defendants' March 25, 2026 letter and their representations at the March 26, 2026 conference, the parties are already working on scheduling the depositions of Trooper Homan-Kernan and Sergeant MacNeir. *See* ECF No. 178, at 1.

19

the State Defendants have not received Plaintiffs' medical records and that only Geraldine C. Jones and Dr. Rhys E. Jones, Sr. have been fully deposed. *Id.* at 12-13. They conclude that "[w]ith the above-noted deficiencies in discovery, it would be grossly unequitable to the [State Defendants] to now permit Plaintiffs to amend [the] Complaint to add the Additional NJSP Persons without even an accurate presentation of alleged damages." *Id.* at 13.

Plaintiffs dispute the State Defendants' characterization, arguing that they have provided all requested discovery and that the State Defendants did not raise any of these disputes at the February 9, 2026 conference. Pls.' Reply at 9. Further, Plaintiffs contend that they have provided Dr. Jones' lost contracts to substantiate his wage loss and have signed all requested medical release forms to substantiate their medical damages. *Id.* at 7. Finally, Plaintiffs assert that they have agreed to participate in all remaining depositions.[8]

Putting aside the parties' differing assertions as to the extent of any discovery deficiencies—all of which were discussed at the March 26, 2026 status conference—Plaintiffs' alleged non-compliance with discovery is not a basis for denying an amendment of the pleadings. The Court has an established avenue for the resolution of all discovery disputes, one that has been thoroughly exercised by all parties. The Court has regularly conducted status conferences and discovery dispute hearings and has mediated multiple deposition disputes within the Courthouse. The State Defendants have not recently filed any letter identifying these precise discovery disputes. Nor have the State Defendants cited any authority for the proposition that a plaintiff's outstanding

---

[8]   As of the time of this writing, it appears that the depositions of all Plaintiffs have been completed. *See* ECF No. 178 (Mar. 25, 2026 Ltr. from Nuo Jiang, Esq.). Moreover, with respect to the damages documentation, the State Defendants have combined all outstanding discovery demands into a "Second Request for Production of Documents," served on March 17, 2026. *Id.* The Court has set forth a procedure for the parties to confer and resolve disputes as to these requests. *See* ECF No. 180.

discovery obligations constitute a basis for denial of leave to amend under Federal Rule of Civil Procedure 15.  Accordingly, the Court rejects this argument.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Plaintiffs' Motion for Leave to File an Amended Complaint.  To the extent Plaintiffs seek leave to add McGinn, Angerman, Heim, Harlinski, and Favoretto as party defendants, Plaintiffs' Motion is **DENIED WITHOUT PREJUDICE** because Plaintiffs have failed to set forth plausible allegations regarding their participation in the relevant events.  To the extent Plaintiffs seek to add Homan-Kernan, MacNeir, Varga, Dornewass, and Wendell as defendants and to add factual allegations regarding their participation in the relevant events, Plaintiffs' Motion is **GRANTED**.

An appropriate Order follows.


s/Elizabeth A. Pascal
ELIZABETH A. PASCAL
United States Magistrate Judge

cc:    Karen M. Williams, U.S.D.J.